## THE PEOPLE *vs.* JOHN W. TREDWAY.

In an indictment for perjury, committed by the defendant upon an examination under oath as to his sufficiency as a surety for another in a bond executed under the 4th subdivision of the 10th section of the " act to abolish imprisonment for debt," &c. after a conviction of the debtor and an order for his commitment under that act, it is not necessary to set forth facts sufficient to show that the officer who entertained the proceedings had jurisdiction to administer the oath.

The cases of *The People* v. *Phelps,* (5 *Wend.* 10.) and *The People* v. *Warner,* (*Id.* 271,) questioned, but followed on the principle of *stare decisis.*

ERROR to the Oneida general sessions. The plaintiff in error was indicted for perjury alleged to have been committed in swearing to his ability to become surety for one Willard Loomis upon proceedings against him under the " act to abolish imprisonment for debt," &c. passed April 26, 1831, before B. P. Johnson, Esq. a supreme court commissioner. The first count of the indictment alleged that on the 18th of December, 1843, Horace Putnam appeared before the said Johnson, a supreme court commissioner residing at Rome, an officer duly authorized to perform the duties of a judge of the supreme court, and adduced to him, by his own affidavit, satisfactory evidence that Willard Loomis was justly indebted to the said Horace Putman in the sum of $220 or thereabouts, on a judgment recovered in the supreme court, and upon which Loomis could not be arrested or imprisoned according to the 1st and 2d sections of the act to abolish imprisonment for debt, and did then and there establish, among other things, that the

said Loomis had property, rights in action, &c. which he fraudulently concealed and unjustly refused to apply to the payment of the said judgment, to the satisfaction of the said supreme court commissioner. That Putnam thereupon applied for a warrant to arrest said Loomis, and the supreme court commissioner then and there issued his warrant, pursuant to the 5th section of the said act, and directed to any sheriff, constable, &c. setting forth the said complaint and commanding the said officer to arrest Loomis and bring him before the commissioner without delay; that the said warrant was accompanied by a copy of the affidavit presented to the commissioner upon which the warrant issued, duly certified by such officer according to the last mentioned section of the said act. That the warrant and copy of affidavit were afterwards delivered to —— of said county, who executed the same by arresting Loomis and delivering to him the certified copy of the said affidavit, and by bringing him before the commissioner. That he being brought before the commissioner such proceedings were thereupon had, according to the provisions of the said act, that the commissioner afterwards, to wit, on the 22d of December, 1843, was satisfied that the said allegations of Putnam were sustained, and decided to grant a warrant of commitment against Loomis, according to the provisions of the act. Whereupon Loomis proposed to enter into a bond with sureties, pursuant to the 4th subdivision of the 10th section of the said act, and thereupon a bond was drawn and presented before the commissioner, (setting it out *in hæc verba.*) That such bond being before the commissioner John W. Tredway (the defendant) was offered as surety for said Loomis in said bond. That he appeared, to justify as to the sufficiency of his pecuniary responsibility to become such surety, and was in due form of law sworn and took his corporal oath before the said commissioner that he would true answers make to such questions as should be put to him touching his ability to become such surety; *he the said supreme court commissioner* then and there *having sufficient and competent power and authority to administer the said oath to him,* &c. setting forth the matters sworn to by the defendant, upon that examination, the materi-

ality of such matters, and alleging the commission of perjury in the particulars specified. The second count of the indictment alleged that Willard Loomis, on the 22d of Dec. 1843, being brought before Benjamin P. Johnson, a supreme court commissioner, upon a warrant previously issued by such commissioner, pursuant to the provisions of the fifth section of the act before mentioned, upon the affidavit of the said Horace Putnam, such proceedings were thereupon had pursuant to the provisions of the said act, that the commissioner adjudged that Loomis had been liable to be committed to jail pursuant to the provisions of the said act. The indictment then stated that Loomis proposed to enter into a bond with sureties pursuant to the fourth subdivision of the tenth section of the act, and that the same was executed accordingly by Loomis, and by the defendant as his surety. It then stated that the defendant offered to justify as to his pecuniary responsibility, the administering of the oath to him by the commissioner, that the commissioner had power to administer such oath, and the committing of the perjury by the defendant upon that occasion, as in the first count.

The prisoner having been convicted moved for a new trial.

*H. A. Foster*, for the defendant.

*C. Comstock*, (district attorney,) for the people.

*By the Court*, GRIDLEY, J. This motion involves only the sufficiency of the indictment, and has no concern with any errors committed on the trial; the questions arising upon the bill of exceptions having been disposed of by the late supreme court upon a motion for a new trial, made before that tribunal. The indictment charges the prisoner with the crime of perjury, committed upon an examination under oath as to his sufficiency as a surety for one Willard Loomis, in a bond executed under the 4th subdivision of the 10th section of the act " to abolish imprisonment for debt," after a conviction of said Loomis and an order for his commitment under that act. The objection now made to the indictment is that it does not set forth facts

The People *v.* Tredway.

sufficient to show that the officer who entertained the proceedings and made the order for commitment, had jurisdiction to issue the warrant. I do not understand it to be contended by the counsel for the people that the indictment would be good if it were necessary to set out the facts conferring jurisdiction upon the officer, as it was before the 23d Geo. 2, ch. 11, in England, and the second section of the act to prevent perjury (1 *R. L.* 171) in this state. By that act however it was made " sufficient to set forth the substance of the offence charged upon the defendant, and by what court and before whom the oath was taken, averring such court or person to have competent authority to administer the same, &c. and without setting forth the commission or authority of the person or court before whom the perjury was committed." Now this enactment was repealed when the revised statutes went into operation, and there is no corresponding provision in those statutes, unless it be found in the 52d section of the act concerning " indictments and proceedings thereon." That section enacts that no " indictment shall be deemed invalid, nor shall the trial, judgment, or other proceedings therein, be affected 1. By the omission of the defendant's title, addition, &c. 2. By the omission of the words ' force and arms,' &c. 3. By omitting the words ' contrary to a statute,' &c. or 4. *By reason of any other defect or imperfection in matter of form, which shall not tend to the prejudice of the defendant.*"

The question presented for our decision is whether this statute of jeofails was intended to relieve the criminal pleader from setting forth in the indictment the facts requisite to confer jurisdiction on the officer who administers an oath—an averment which would seem to be *essential,* as a matter of substance, to the very existence of the crime of perjury—and without which (in analogous cases) in civil suits a pleading would be held insufficient. I confess that if this were a new question, I should hold with the counsel for the prisoner, that such a construction of the act went far beyond the intent of its framers, and was not warranted by any sound rule of interpretation. But we are constrained to say that the question is no longer an open one.

The People *v.* Tredway.

It has been directly decided in the case of *The People* v. *Phelps*, (5 *Wend.* 10,) and the principle again reiterated and declared to have been settled in the former case, in *The People* v. *Warner*, (*Id.* 271.) Now if this had been an *obiter dictum* merely, or if we could see that some important principle had been overlooked by the court, and not considered, we might have disregarded this case as an authority. Such, however, is not the fact. The construction and the effect of the provision of the revised statutes in question was the very point on which the case of *The People* v. *Phelps* turned. The court, too, were aware of all the decisions at common law, and of all the statutory enactments necessary to be considered in coming to a right judgment upon the question before them. Under such circumstances we must regard this decision as binding upon us, or we must abandon the principle of " *stare decisis*," and make the stability and certainty of the law depend on the individual opinions of successive judges. It is better that an erroneous rule should be endured, till it can be corrected by a higher tribunal, or changed by the legislature, than that the law should be subject to constant fluctuation and change. It is probable that the indictment in this case, and hundreds in other cases, have been drawn upon the authority of the decision in question. Having come to the conclusion that the indictment must be held good, upon authority, it becomes unnecessary to examine another question suggested by the counsel to the court, upon the argument. We must therefore deny the motion for a new trial.