### RICHARD THOMPSON, plaintiff in error, *v.* THE PEOPLE, defendants in error.

In charging, in an indictment, a statutory offence, it is not necessary to follow the precise language of the statute, but words of equivalent import are sufficient.

An indictment for burglary in the second degree, charging the felonious breaking and entering of the "house" of E. B. P., with intent, &c., was adjudged sufficient, on writ of error, it being held that the word "house," in its primary and common acceptation, meant a "dwelling-house."

After conviction and sentence, it is too late to question the indictment, if it contain the substance of the offence, so that the defendant have intelligible notice of the charge made against him.

Where the return to a writ of error contained only the indictment and the clerk's minutes of the trial, showing the empanneling of the jury, the verdict of guilty and the sentence of the court, without any judgment record, it was held that the questions could not be raised, whether the defendant was present at the trial, or whether he was asked previous to the passing of the sentence if he had anything to say why sentence should not be pronounced against him.

Whether such objections would have been available if the record had been before the court, *quere.*

THIS was a writ of error to the Chenango Oyer and Terminer, where the prisoner was convicted of burglary in the second degree.   The facts are sufficiently stated in the opinion of the court.

*Horace Packer,* for the plaintiff in error.

Thompson v. The People.

I. The indictment is not good on its face. It does not state facts to constitute the crime. The word "house" is too general, and is not within the statute. Our statute (2 R. S., 669) is the same as the English 7th and 8th George IV., ch. 29. (1 Arch. Cr. Pl., 225.) The offence must be laid as committed in a "dwelling-house." (4 Bl. Com., 225; Russ. on Cr., 797, 819, 820, 826; 1 Hale, 550; Bac. Abr., tit. "Burglary," E.; Chit. Cr. Law, 1109; Barb. Cr. Law, 96; Roscoe's Cr. Ev., 349; Fost. Cr. Law, 38, 39.) Many of our own courts have had the principle involved in this question before them, and have uniformly held with the English authorities. (Wild's case, 2 Metc., 408; 3 Serg. & Rawle, 199; 16 Mass., 141; 2 Mason, 140.)

II. The indictment should charge that the house was a dwelling, and that some person resided or dwelt in it. (Forsyth v. Commonwealth, 6 Ham. Ohio, 22.) In Lewis' case (16 Conn., 32), the words "in the night season," were omitted, and after verdict of guilty and judgment, error was brought, and judgment reversed. The Supreme Court of Virginia, in error, held a like defect fatal in Mark's case (4 Leigh, 658). Our late Court of Errors, in Lambert's case (9 Cow., 578), say: "Every indictment must contain a certain description of the crime, and a statement of the facts by which it is constituted." The Supreme Court, in Allen's case (5 Denio, 76), held the same, and say that where the statute defines an offence, the indictors must allege the facts to bring it within that definition. Our statute (2 R. S., 668, 669) defines burglary, "The breaking into and entering in the night-time the dwelling-house of another, in which there shall be at the time some human being, with intent," &c., either, &c., specifying the modes, means, manner and circumstances, all of which are wanting in this indictment to make it burglary in the second degree. In this degree it must be a dwelling-house. Burglary cannot be committed in any other house or building, unless it be joined or attached to the dwelling and under its protection, and then

it must be laid as committed in the dwelling-house, and the circumstances must be stated. This might have been a wood-house, or hen-house, or carriage-house, or cheese-house, &c. Webster defines a dwelling-house to be a house in which one lives. He defines a "house" to be a building intended or used as a habitation. It may be of man or beast; it may be a college, a temple, monastery, the manner of living, the table, a family of ancestors, a tribe, the quorum of a legislative body, the grave, the body, the residence of the soul in this world, or domestic concerns; a residence is about the last definition Webster gives to house. "The indictment must be certain to every intent, and without any intendment to the contrary." (1 *Chitty on Cr. Law*, 171, 172; *Cro. Eliz.*, 490; *Cro. Jac.*, 20; *Stark. Cr. Pl.*, 203; *id.*, 214.) "No latitude of intention can be allowed to include anything more than is expressed." (2 *Burr.*, 1127; 2 *M. & S.*, 381; 1 *Chitty Cr. Law*, 172.) "Every crime must appear on the face of the record with a scrupulous certainty." (1 *Chitty Cr. Law*, 172; *Cald.*, 187; 1 *Chitty Cr. Law*, 226, 227; *Arch. Cr. Pl.*, 40, 41; *Lambert's case*, 9 *Cow.*, 578.) The breaking and entering in the night-time "a house not occupied as a dwelling-house," and committing a larceny therein, constitutes only a larceny. (2 *Metc.*, 408.) Here the intent to steal only is charged, and it is made burglary in the second degree. These defects vitiate the indictment. (1 *Chitty Cr. Law*, 226, 227; *Arch. Cr. Pl.*, 38); and the defendant may take advantage of them by writ of error. (*Arch. Cr. Pl.*, 38, 39; 5 *East*, 304; 2 *Hill*, 248; 2 *R. S.*, 740; *and cases above cited.*) The defendant below does not appear to have been present to object to the defects.

III. The record and judgment are bad on error. 1. It does not appear that the defendant was present at the trial, or when sentence was pronounced. 2. The record and proceedings should show upon their face that the court had jurisdiction of the person as well as of the subject matter. This defect would be fatal on error even in a civil action.

Thompson *v.* The People.

3. It does not appear that the clerk or court asked the defendant what he had to say (if present) why sentence should not be pronounced against him; and this is error. (*The People* v. *Clark*, 1 *Park. Cr. R.*, 360, *and cases there cited; Safford* v. *The People, id.,* 474, *and cases there cited.*) These two cases were brought up on error and judgments reversed. 4. The record cannot now be amended. (*Miller* v. *Finkle*, 1 *Park. Cr. R.*, 374.) 5. The judgment should be reversed, and the defendant therein discharged. (*Taylor* v. *The People*, 3 *Denio*, 97, *and cases there cited.*)

*Isaac S. Newton* (District Attorney), for the people.

I. The offence is sufficiently described in the indictment to sustain the conviction. 1. The word house will be deemed to mean a dwelling-house, according to its common intent and use, and especially so in this case, after trial, proof of breaking a dwelling-house in the night-time given without objection, and conviction and judgment thereon.

The word house means, "*appropriately, a building or edifice for the habitation of man; a dwelling place, mansion or abode for any of the human species.*" (*Webster.*) And "every *house* for the dwelling and habitation of man is taken to be a mansion house in which burglary may be committed." (3 *Inst.,* 64; *Arch. Cr. Pl.,* 330, *note I.,* 6*th ed.*) It has always been and is sufficient to use the word mansion, instead of dwelling-house. (*Barb. Cr. L.,* 103; *Bacon's Abr., tit.* "*Burglary,*" *E.;* 4 *Black. Com.,* 224; *The Commonwealth* v. *Pennock,* 3 *Serg. & Rawle,* 199.) This is because the mansion is, by common acceptation, a place of residence. By parity of reasoning, the word house with us is sufficient, as in common use it has the same meaning. Under the statute the indictment is good. It will be seen that it describes a dwelling-house within the definition found in 2 *Revised Statutes* (657, § 9; *id.,* 844, 4*th ed.*), and 2 *Revised Statutes* (669, § 16; *id.,* 854, 4*th ed.*) The same term, dwelling-house,

Thompson *v.* The People.

is used in the statute for the crime of arson in the first degree. Under that it is held that " 'House,' merely, without saying 'dwelling-house,' will suffice." (*Barb. Cr. L.*, 69, *2d ed.*)

II. This objection comes too late. It is in principle, if valid at all as an objection, precisely like the case of *The People* v. *Powers* (2 *Seld.*, 50). The defect complained of is, in fact, and under the decisions, matter of form merely. It did not and does not tend to prejudice him. It is such a case as is provided for by 2 *Revised Statutes* (728, § 52). That statute provides that "No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be affected, *by reason of any defect or imperfection in matters of form which shall not tend to the prejudice of the defendant.*" It has been decided, under this statute, that an indictment is good if it contain the substance of the offence, so that the defendant shall have intelligible notice of the charge against him; that defects are settled by judgment. (*The People* v. *Powers*, 2 *Seld.*, 50; *The People* v. *Biggs*, 8 *Barb.*, 547; *The People* v. *Treadway*, 3 *Barb.*, 470; *The People* v. *Phelps*, 5 *Wend.*, 10; *The People* v. *Rynders*, 12 *Wend.*, 431, 432; *The People* v. *Warner*, 5 *id.*, 271; *The People* v. *Taylor*, 3 *Denio*, 91; *Butler* v. *The People*, 4 *id.*, 68, 71.) The strictness with which indictments were formerly construed has been greatly relaxed. (*The People* v. *Lohman*, 2 *Barb.*, 216, and *also cases cited above.*)

III. The indictment is good at common law, as well as under the statute. At common law the burglary must take place in a mansion or dwelling-house in the night-time. (*Butler* v. *The People*, 4 *Denio*, 70; *Arch. Cr. Pl.*, 330, *note* 1, *6th ed.*) But it is sufficient to state the substance of any offence at common law, and the substance is here stated, and it is good, especially after verdict. (4 *Bl. Com.*, 224; *see definitions in point I., above.*) The authority of 1 *Hale* (*p.* 550), it is submitted, was never good, and has not been followed in adjudged cases, though quoted by some authors. (2 *Bouv.*

*Bacon's Abr.*, 135, *tit.* "*Burglary*," *E.*)   It is there said, in speaking of this question, that "*Andr.*, 302, *and S. P. C.*, *mention precedents of indictments of burglary* IN DOMO, *without adding* MANSIONALI.   Also, it is agreed, that burglary may be committed in breaking churches, or the walls or gates of a walled town, in which the word *mansionalis* cannot be made use of."   This state has never held the position of Hale good, and since the statute above quoted, and the decisions under it, there can be no doubt of the correctness of the judgment in this case.

MASON, J.   The defendant was indicted under the twelfth section of article two, part four, chapter one of the Revised Statutes, which enacts that "every person who shall be convicted of breaking into any dwelling-house in the night-time, with intent to commit a crime, but under such circumstances as shall not constitute the offence of burglary in the first degree, shall be deemed guilty of burglary in the second degree." (2 *R. S.*, 668, § 12.)   There is but one count in the indictment in this case, which charges "that Richard Thompson, late of the town of Oxford, in the county of Chenango aforesaid, on the fifteenth day of October, one thousand eight hundred and fifty-four, with force and arms, about the hour of twelve o'clock in the night of the same day, at the village of Oxford, in the county aforesaid, the house of Eleanor B. Padgett, there situate, feloniously did break and enter, with intent, the goods and chattels and property of the said Eleanor B. Padgett, in the said house then and there being, then and there feloniously and burglariously to steal, take and carry away the goods, chattels and property of the said Eleanor B. Padgett, in the said house then and there being, to the great damage, &c., and against the form of the statute," &c.

The defendant was tried in the Oyer and Terminer, and was convicted of burglary in the second degree.   No question was raised upon the trial as to the sufficiency of the

indictment, or for any defect therein. The defendant was sentenced to imprisonment in the state prison for five years. No motion, in arrest of judgment or otherwise, was made in the court below. No bill of exceptions has been made, but the defendant has procured a writ of error, and has caused the indictment to be certified to this court, with the clerk's minutes of the trial, showing the empanneling of the jury, the verdict of guilty, and the sentence of the court. There is no record returned by the clerk. The defendant now asks a reversal of the judgment, on the ground that the indictment does not charge a criminal offence; that it is defective in omitting the word "dwelling" before "house;" that the words "dwelling-house" must be used in charging the offence of burglary under the statute.

It is not necessary to follow the precise language of the statute in charging the offence in the indictment. Using words of equivalent import to those in the statute is sufficient. (*Whart. Am. Cr. L.*, 133, 137; *Rex* v. *Fuller*, 1 *B. & P.*, 180.) The indictment in the case at bar charges a criminal offence under this statute, and the offence is sufficiently described to sustain the conviction. It has always been held sufficient to use the word "mansion," instead of "dwelling-house," in charging the offence. (*Barb. Cr. L.*, 103; *Bac. Abr., tit.* "*Burglary*," *letter* "*E*;" 3 *Serg. & Rawle*, 199; 2 *Arch. Pl.*, 330, *note, 1st ed.*) This is because the word "mansion" means a dwelling-house or place of residence. The word "house," with us, is sufficient, for the same reason; because, in common parlance, it has the same signification. The word "house" means "a building or edifice for the habitation of man; a dwelling place, mansion or abode for any of the human species." (*Webster.*) It does not mean a wood-house, hen-house, ash-house, hog-house, corn-house, warehouse, &c. It means, in its primary and common acceptation, an edifice for the habitation of man, a dwelling place or abode for the human species, a dwelling-house. It is sufficient if the indictment contain enough to inform the defendant and the

court of the precise nature of the charge. ( *The People* v. *Rynders,* 12 *Wend.,* 431.) The statute in regard to arson in the first degree uses the same term, " dwelling-house," and under that statute it is held sufficient to describe the building in the indictment " the house of A. B.," without saying " dwelling-house." ( *Barb. Cr. L.,* 55, 1*st* ed.; *id.,* 69, 2*d* ed.; 1 *Hall,* 567.) But again, the objection now made to this indictment comes too late to avail the prisoner after conviction and sentence. ( 2 *Seld.,* 50, 52; 2 *R. S.,* 728, § 52.) The indictment is good if it contain the substance of the offence, so that the defendant have intelligible notice of the charge against him. All defects beyond this are settled by the verdict and judgment. ( 2 *Seld.,* 50; 3 *Barb.,* 470; 8 *id.,* 547; 5 *Wend.,* 10–12, 271; 12 *id.,* 431, 432; 3 *Denio,* 91; 4 *id.,* 68, 71.)

The counsel for the prisoner claims the reversal of the judgment in this case, on the ground that it does not appear that the defendant was present at the trial or when sentence was pronounced, and that it does not appear that the clerk or the court asked the defendant what he had to say why sentence should not be pronounced against him; relying upon the cases of *The People* v. *Clarke* ( 1 *Park. Cr. R.,* 360) and *Sanford* v. *The People* ( *id.,* 474). There are two answers to these objections. In the first place, there is no record brought up by this writ of error, and nothing like it. There is nothing before us on which error can be assigned, except the indictment, and I do not think that we should ever pass upon that, disconnected from a record showing a trial and judgment; and so we held at the last term, in the case of *The People* v. *Griswold.* In the case of *The People* v. *Gray* ( 25 *Wend.,* 467), the court say the record of judgment has not been brought up, and objections to errors in form, that might be corrected in making it up, cannot be entertained; and I very much doubt whether it is an error for which the judgment should be reversed, if it appear from the record that the prisoner was not asked if he had anything to

say before sentence. It is not necessary, however, to decide this question, as we have no record here on which such error can be alleged.

I see no reason to interfere with the conviction and sentence in this case.

GRAY, J., concurred, and SHANKLAND, J., dissented.

Judgment affirmed.

---

SUPREME COURT. At Chambers, Kings, August 16, 1856. Before *Birdseye*, Justice.